# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKEL L. PEUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-0338-CVE-TLW |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 25) of Magistrate Judge T. Lane Wilson (the magistrate judge) recommending that the Court reverse and remand in part and affirm in part the Commissioner's decision to deny plaintiff's claim for disability benefits. The magistrate judge found that the administrative law judge (ALJ) failed to evaluate the opinions of one of plaintiff's treating physicians according to Tenth Circuit precedent, necessitating reversal. Dkt. # 25, at 10-13. The magistrate judge discerned no error on the other issues presented, and he affirmed the ALJ's decision on those issues. Id. at 13-39. Defendant objects to the magistrate judge's recommendation solely as to the ALJ's evaluation of the treating physician's opinions, arguing that the ALJ's decision adequately explained his reasoning and that any error was harmless. Dkt. # 26, at 1-3. Plaintiff responds that the ALJ did not follow the proper procedure for evaluating a treating physician's opinion and that defendant's arguments are impermissible post hoc justifications. Dkt. # 27, at 1-3.

**I.**

Plaintiff was 35 years old when he applied for disability and supplemental social security benefits in 2011. Dkt. # 10-5, at 3-4. He alleged various mental disabilities, including a learning disability, post-traumatic stress disorder, hallucinations, anxiety, attention deficit disorder, and dyslexia. Dkt. # 10-6, at 3. Plaintiff's claim was denied initially and upon reconsideration, Dkt. # 10-3, at 4, 7, after which he sought a hearing before an ALJ. Id. at 24. The hearing was held on December 10, 2012. Dkt. # 10-2, at 10.

At the hearing, plaintiff testified that he completed high school as part of a special education program, but he had no post-high school education. Id. at 36. He did not have a driver's license, instead using public transportation. Id. He lived with his girlfriend, her three children from a prior relationship, and their infant child. Id. at 37. Plaintiff admitted to past use of marijuana and methamphetamine, but he testified that he ceased all use of illegal substances three to four years prior to the hearing. Id. at 37-38. On the hearing date, plaintiff was employed part-time as a cashier and general worker at a fast food restaurant. Id. at 38. He stated that, although he had been offered full-time employment, he declined to work more than 20 hours a week because the additional work caused him to become stressed and confused, losing focus and forgetting tasks. Id. at 39. Prior to working in the restaurant, plaintiff found employment as a night stocker, a sandwich maker, and a grocery store deli attendant. Id. at 50. In the calendar year prior to the hearing, plaintiff applied for and received unemployment benefits. Id. at 40.

Plaintiff described in detail the effects of his psychological disabilities. Plaintiff stated that he would routinely become confused as to the bus schedule and routes, even those with which he was familiar. Id. at 42. Although he graduated from high school, plaintiff testified to significant

difficulty with, inter alia, performing simple mathematics, to the point that he did not believe that he could make change without an electronic cash register. Id. at 42-43. Plaintiff could cook and shop, but only with close supervision to prevent forgetting a task or an item. Id. at 43, 45. Plaintiff would regularly forget where household items were located, even though the items had not been moved from their customary places. Id. at 46. Plaintiff also described hearing voices, but medication reduced their frequency from every other day to once a month. Id. at 44.

Vocational expert (VE) A. Glen Marlowe, M.S. in Psychology and Rehabilitation Counseling, testified at the hearing after plaintiff. See Dkt. # 10-4, at 56. The ALJ presented the VE with a hypothetical scenario involving an individual who could perform light or sedentary work and could interact with coworkers on a routine basis, but who could not climb or use dangerous machinery and who was limited to simple instructions. Dkt. # 10-2, at 51. The VE testified that such a person could perform both plaintiff's past work as a sandwich maker and his current work as a restaurant worker; moreover, a number of other jobs existed in the national economy that the hypothetical person could do, and the VE identified four such jobs. Id. at 51-52. When the ALJ asked whether the same hypothetical individual, limited to close supervision, would be able to work, the VE answered in the negative. Id. at 53. Plaintiff's attorney asked the VE to review a mental status form and a mental residual functional capacity assessment form (the forms) that were signed by Maura Pollak, LPC, and Chris Blaisdell, D.O. Id. at 55. The VE noted that the forms identified plaintiff as having several marked and severe limitations in his ability to work, and the VE opined that a hypothetical individual with those limitations would be unable to perform any competitive work. Id. at 55-56.

The ALJ issued his decision on October 22, 2012. Id. at 10. He found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, despite being employed, because plaintiff's annual earnings were too low. Id. at 16. The ALJ determined that plaintiff had four severe impairments--learning disability, anxiety disorder, post-traumatic stress disorder, and schizoaffective disorder--but that these impairments did not meet one of the listed impairments in the regulations. Id. at 17. The ALJ determined that plaintiff's RFC matched that of the first hypothetical scenario described to the VE. Id. at 18. The ALJ then summarized plaintiff's testimony from the hearing. Id. at 19-20.

Next, the ALJ discussed the evidence in the record. Intake notes from Associated Centers for Therapy, which began providing plaintiff with psychiatric care in January 2011, showed his intellectual functioning as below average, but they also reported that plaintiff last used methamphetamine only a few weeks prior to intake, contradicting plaintiff's testimony at the hearing. Id. at 20-21. Minor Gordon, Ph. D., completed a psychological evaluation of plaintiff on June 17, 2011. Id. at 21. Dr. Gordon diagnosed plaintiff with post-traumatic stress disorder and schizoaffective disorder, id., but he concluded that plaintiff could "perform some type of routine and repetitive task on a regular basis as well as to relate adequately with coworkers and supervisors on a superficial level for work purposes." Id. at 22. Corine Samwel, Ph. D., completed a mental residual functional capacity assessment and a psychiatric review of plaintiff on October 7, 2011. Id. Dr. Samwel believed that plaintiff was limited in his ability to maintain concentration for extended periods, but he could perform routine tasks on a sustained basis with normal supervision. Id. The forms, signed by Pollak and Dr. Blaisdell, reported both short and long-term memory problems and diagnosed plaintiff with schizoaffective disorder and post-traumatic stress disorder. Id. The forms

4

assessed plaintiff as having a number of marked and severe limitations in his ability to work, particularly as to his ability to concentrate. Id.

The ALJ then considered plaintiff's credibility and the weight to give the opinion evidence. The ALJ found plaintiff only partially credible because his statements to his physicians and to the ALJ about his symptoms, as well as his conflicting reports of drug use, undermined his veracity. Id. at 23. The ALJ gave great weight to the opinions of Dr. Gordon and Dr. Samwel, finding that they were consistent with and supported by the medical evidence. Id. at 23-24. As to the forms, the ALJ stated: "The opinion of Ms. Pollak, was given little weight." Id. at 24. He noted that Pollak was "not an acceptable medical source" under the regulations and that the forms were "based upon the claimant's subjective complain[t]s only." Id. He concluded by stating that he would "not evaluate [the forms] as opinion evidence in this case, and . . . accords the opinion little weight." Id. Without discussing its contents, the ALJ also gave little weight to the function report of plaintiff's girlfriend, finding her statements not credible in light of her financial interest in the outcome of plaintiff's case. Id.

Based on the RFC determination and the VE's testimony, the ALJ found that plaintiff could not perform his past relevant work. Id. at 25. However, he determined that plaintiff was capable of performing other jobs existing in the national economy, and he specifically cited the four jobs previously identified by the VE. Id. at 26. Accordingly, the ALJ concluded that plaintiff was not disabled and denied his application for benefits. Id. at 27. Plaintiff requested a review of the ALJ's decision by the Appeals Council, which was denied. Id. at 2. Plaintiff sought judicial review, Dkt. # 2, and the matter was referred to the magistrate judge for a report and recommendation. The magistrate judge recommends that this Court reverse and remand in part and affirm in part. Dkt. #

25. Defendant has filed an objection to the report and recommendation, Dkt. # 26, and plaintiff has filed a response to defendant's objection. Dkt. # 27.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

**III.**

The agency has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if the decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided plaintiff's case at step five, concluding that plaintiff could not perform his past relevant work but that he could perform other work existing in the national economy. Dkt. # 10-2, at 25-26. Having so decided, the ALJ found plaintiff not disabled and denied his claim for benefits. Id. at 27. The magistrate judge recommends that the ALJ's decision be reversed and remanded in part for failure to evaluate the forms as the opinions of a treating physician.[1] Dkt. # 25, at 10-13. Defendant objects to the report and recommendation solely as to the finding that the ALJ's decision should be reversed and remanded in part, arguing that the ALJ's analysis was correct and

---

[1] The magistrate judge recommends that the ALJ's decision be affirmed as to all other issues, Dkt. # 25, at 13-19, and no party has objected to that recommendation. Under Rule 72, the Court must conduct a de novo review only of those portions of the report and recommendation to which objection is made. FED. R. CIV. P. 72(b)(3). The Court has independently reviewed the report and recommendation as to the issues to which no objection was made and sees no reason to modify or reject it.

that any error was harmless. Dkt. # 26, at 1-3. Plaintiff responds that the ALJ's error was not harmless and that the report and recommendation should be adopted. Dkt. # 27, at 1-3.

The Court previously addressed these arguments in Dearman v. Colvin, No. 14-CV-0162-CVE-PJC, 2015 WL 2452913 (N.D. Okla. May 22, 2015). As in that case, the ALJ here treated the forms, signed by both Pollak and Dr. Blaisdell, as being solely the opinions of Pollak, Dkt. # 10-2, at 24 (referring to the forms as "[t]he opinion of Ms. Pollak"), even though the ALJ acknowledged that Pollak completed the forms "under the instruction of Dr. Blaisdel[l]." Id. at 22. The magistrate judge, citing McGoffin v. Barnhart, 288 F.3d 1248 (10th Cir. 2002), found the forms to be the opinions of Dr. Blaisdell. Dkt. # 25, at 12. The ALJ in McGoffin refused to give any weight to an assessment prepared by the claimant's case manager and signed by her treating psychiatrist because, inter alia, the ALJ doubted that the assessment accurately reflected the treating psychiatrist's opinion. McGoffin, 288 F.3d at 1252. The Tenth Circuit held that it was error to disregard the assessment based on doubts as to whether the signing physician agreed with the opinion. Id. Rather, if the ALJ believed the assessment was not the physician's opinion, then the ALJ should have contacted the physician for clarification.[2] Id. The ALJ here did not express outright doubt as to whether the forms were truly Dr. Blaisdell's opinion, as the ALJ in McGoffin did. However, as this Court previously wrote: "McGoffin remains applicable . . . [because] in McGoffin, the Tenth Circuit considered an assessment completed by non-medical personnel but signed by a physician to be the

---

[2]   At the time, a federal regulation required the ALJ to resolve a perceived inconsistency by contacting the physician. See McGoffin, 288 F.3d at 1252 (citing 20 C.F.R. § 404.1512(e)(1) (2001)). Since McGoffin, the regulations have been amended, and an ALJ may now resolve an inconsistency through several possible means, including contacting the physician. See 20 C.F.R. § 404.1520b(c) (2015).

8

opinion of the physician." Dearman, 2015 WL 2452913, at *4. Thus, the forms must be treated as Dr. Blaisdell's opinions.

The magistrate judge found Dr. Blaisdell to be one of plaintiff's treating physicians, Dkt. # 25, at 12-13, and defendant implicitly agrees with this finding. Dkt. # 26, at 1-2 (noting, with citations to the record, that plaintiff was seen by Dr. Blaisdell on several occasions). A treating physician is one "who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimaint]." 20 C.F.R. § 404.1502. The Tenth Circuit has determined that a treating physician must have "a relationship of both duration and frequency" with the claimant. Sissom v. Colvin, 512 F. App'x 762, 765 (10th Cir. 2013)[3] (citing Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003)). The record shows that plaintiff had at least five separate appointments with Dr. Blaisdell, spanning approximately eight months. Dkt. # 10-7, at 78-79, 81-82, 84-85, 87-88, 90-91. These appointments included discussions of plaintiff's medications and symptoms. E.g., id. at 84. The Court finds Dr. Blaisdell to be one of plaintiff's treating physicians.

As the forms are Dr. Blaisdell's opinions and Dr. Blaisdell is one of plaintiff's treating physicians, precedent requires the ALJ to evaluate the forms as the opinions of a treating physician. A treating physician's opinion is generally entitled to more weight than medical opinion evidence from non-treating sources. Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004). To determine the weight afforded to treating physician evidence, the ALJ must follow a two-step analysis. Id. First, the ALJ must

---

[3]  Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

9

> consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Id. If the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference, and the ALJ must consider six factors to determine the weight that the opinion should be given. Id. The Tenth Circuit has been clear that an ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion, and the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion . . . ." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ did not follow the two-step analysis prescribed by Langley when considering the forms. Although noting that Pollak completed the forms "under the instruction of" Dr. Blaisdell, Dkt. # 10-2, at 22, the ALJ stated that "[t]he opinion of Ms. Pollak[] was given little weight." Id. at 24. The ALJ assigned the forms little weight because they were based on plaintiff's subjective complaints alone and because Pollak was not an acceptable medical source. Id. The ALJ concluded by stating: "the undersigned does not evaluate [the forms] as opinion evidence in this case." Id. At no point does the ALJ assess whether the forms are "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Langley, 373 F.3d at 1119. Nor does the ALJ state whether the forms are consistent with other evidence in the record. Likewise, the ALJ does not address, much less consider, the six factors used to determine the weight of a treating physician's opinion when that opinion is not entitled to controlling weight. As the magistrate judge concluded, Dkt. # 25, at 19-20, this is reversible error.

Defendant argues that the ALJ's decision to accord the forms little weight is supported by his stated reasoning and by the contrary medical evidence in the record. Dkt. # 26, at 1-2. Defendant asserts that an ALJ "may disregard even a treating physician's opinion when such opinion is based on subjective descriptions of symptoms that are properly discounted." Id. at 2 (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). However, an ALJ's decision to disregard an opinion based on a claimant's subjective descriptions must be predicated on the ALJ following the proper procedures for analyzing a treating physician's opinion; to conclude otherwise would transform the Langley treating physician analysis into a mere suggestion. Defendant cites to the findings of Dr. Gordon as well as the progress notes of other mental care providers to argue that the forms contradict other medical evidence and, for that reason, could be given little weight under Langley. Id. The ALJ's state reasoning for assigning little weight to the forms does not address the contrary medical evidence in the record. See Dkt. # 10-2, at 24. The ALJ assigned the forms little weight because they were based on plaintiff's subjective complaints and because Pollak "was not an acceptable medical source." Id. As the magistrate judge wrote: "While the ALJ may find, as the Commissioner argues, that the opinions are not supported by the objective medical evidence, it is the ALJ's duty, and not the Court's, to make that determination." Dkt. # 25, at 12.

Defendant also argues that the ALJ's decision to deny benefits should be affirmed under the harmless error doctrine. Dkt. # 26, at 2-3. The Tenth Circuit has said that an ALJ's flawed decision may be affirmed "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145

11

(10th Cir. 2004). The Tenth Circuit has admonished courts to "apply harmless error analysis cautiously in the administrative review setting," Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005), because

> if too liberally embraced, it could obscure the important institutional boundary . . . that courts avoid usurping the administrative tribunal's responsibility to find the facts . . . [and] to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action.

Allen, 357 F.3d at 1145. The Tenth Circuit has employed harmless error analysis where medical opinions not weighed or incorrectly weighed were either consistent with or more prejudicial to the claimant than the ALJ's eventual findings. See Keyes-Zachary v. Astrue, 695 F.3d 1156 (10th Cir. 2012). Similarly, the Tenth Circuit found it harmless error where an ALJ did not discuss a particular physician's opinion because the ALJ, following the proper procedure, rejected the "nearly identical opinion" of another physician. Lately v. Colvin, 560 F. App'x 751, 754 (10th Cir. 2014). Defendant argues that, because the ALJ stated that the forms were completed at Dr. Blaisdell's direction, the ALJ acknowledged that the forms were the opinions of a treating physician. Dkt. # 26, at 3. Further, it contends that the rationales for assigning little weight to the opinion--that the forms are based on plaintiff's subjective complaints and that they are contradicted by other medical evidence--demonstrate the harmlessness of any error. Id.

However, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen, 357 F.3d at 1145. While the forms do appear to have been based on plaintiff's subjective complaints, so too were the opinions of Dr. Gordon and Dr. Samwel, see Dkt. # 10-7, at 19-21, 57, both of which were assigned great weight by the ALJ. Dkt. # 10-2, at 24. While the ALJ may find that the forms

12

are contradicted by other evidence and, for that reason, should be given little weight under Langley, that is a decision for the ALJ to make as the factfinder in this case. See Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (stating that courts should not reweigh the evidence or substitute its judgment for the ALJ's). As this Court previously wrote in Dearman: "The fact that a contrary medical opinion exists does not undermine--indeed, it enhances--the need for the ALJ to make a proper determination of the weight to be given to the forms. This is especially true where, as here, the improperly weighed opinions would support an RFC more favorable to plaintiff." Dearman, 2015 WL 2452913, at *6 (citing Smith v. Colvin, No. 13-CV-0269-CVE-TLW, 2014 WL 2216998, at *5 (N.D. Okla. May 29, 2014)). Bearing in mind that the harmless error analysis is to be applied "cautiously," Fischer-Ross, 431 F.3d at 733, the Court cannot find harmless the ALJ's error in considering the forms to be solely the opinions of Pollak. Plaintiff's case is remanded to the ALJ for a proper determination of the weight to be given to the forms as the opinions of plaintiff's treating physician, Dr. Blaisdell.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 25) is hereby **accepted as entered**. The decision of the Commissioner is hereby **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 7th day of July, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE